## IN THE HAMILTON COUNTY COMMON PLEAS COURT
## CIVIL DIVISION

**FAIR WORK ALLIANCE**
2300 Montana Avenue, Suite 301
Cincinnati, Ohio 45211

      Plaintiff,

vs.

**INSTAWORK**
548 Market Street
San Francisco, California 94104

and

**QWICK**
6501 E. Greenway Parkway
Scottsdale, Arizona 85254

and

**GIGPRO**
P.O. Box 31938
Charleston, South Carolina 29414

and

**WONOLO**
9450 SW Gemini Drive
PMB 96809
Beaverton, Oregon 97008

and

**TRABA**
483 Broadway
Floor 2
New York, New York 10013

and

Case No._____

Judge_____

**COMPLAINT WITH JURY DEMAND**

**VERYABLE**
2019 N. Lamar Street
Suite 250
Dallas, Texas 75202

and

**GIGSMART**
999 18th Street
Denver, Colorado 80202

and

**TEND**
20 Jay Street
Suite 218
Brooklyn, New York 11201

and

**JOHN DOES 1-1000**

Defendants.

Now comes Plaintiff Fair Work Alliance, by its attorney and for its Complaint against Defendants states and avers as follows:

## I.      NATURE OF ACTION, PARTIES, JURISDICTION AND VENUE

1.      This is an action for unfair competition, racketeering, and tortious interference with a business relationship and/or contract violation of Ohio state law and seeking damages in excess of $500,000, the exact amount which will be established according to proof at trial.

2.      Plaintiff is a non-profit corporation, organized under Ohio law. Plaintiff is pursuing action on behalf a leading W2 staffing platform that connects businesses with W2 employees in real time for both short term and full time shift positions and encourages other staffing companies that legally employ their workers to join its action.

2

3.     Defendant companies are foreign for profit corporations and competitors of Plaintiff's class participants who work in the staffing industry that primarily utilize 1099 employees in lieu of W2 workers to obtain an unlawful competitive advantage over Plaintiff.

4.     This Court has subject matter jurisdiction over the matters asserted herein.

5.     Venue in this Court is appropriate as Defendants conduct or has conducted business in this county.

## II.     BACKGROUND FACTS

7.     Plaintiff incorporates the preceding paragraphs as though fully rewritten herein.

8.     This case is brought pursuant to the common law of the state of Ohio for unfair competition and for tortious interference with a business or contractual relationship. Simply put Defendants have obtained an unfair competitive advantage in respect to Plaintiffs by paying their workers as 1099 individuals instead of W2 employees. The individuals utilized by Defendants are unlawfully paid as 1099's when their work is clearly the work of a W2 employee.

9.     Plaintiff represents a hospitality and light industrial staffing company that provides service workers to its clients. In accordance with state and federal law, Plaintiff classifies its workers as employees and this bears the typical costs of being an employer, such as paying minimum wage and overtime and complying with other state and federal protections, maintaining workers' compensation insurance, and paying significant payroll taxes, and bearing administrative payroll costs associated with collecting and maintaining employee tax forms. However, in recent years, Plaintiff has been increasingly undercut significantly by competing companies that bill themselves as "gig economy platforms," such as Defendants which have lifted a page from the "Uber" playbook, and misclassified their workers as independent contractors rather than employees. In reality, Defendants are staffing companies (just like

3

Plaintiff), and they have violated state and federal law by classifying their workers as independent contractors. In so doing, they have been able to offer lower prices than Plaintiff, thereby gaining a significant competitive advantage. The investors backing those companies have engaged in racketeering by encouraging them to profit from this misclassification.

10. Plaintiff, which has complied with the law by classifying its workers as employees, has had its' business significantly undercut by Defendants' actions and has lost numerous clients as a result, significantly impacting its revenue. Defendants' conduct is both unlawful and unfair, in violation of Ohio's common law regarding unfair competition and has tortuously interfered with Plaintiff's business relationship and contracts.

11. By misclassifying their workers as independent contractors rather than employees, Defendants have been able to save significantly on their labor costs, which in turn has allowed them to unlawfully undercut competitors, such as Plaintiff, who follow the law.

12. Unsurprisingly, Plaintiff has lost significant business to Defendants. Those companies have been able to offer lower prices for their services, given the fact that they incur much lower labor costs by not complying with requirements imposed on employers who comply with lawful requirements.

13. In many cases, Plaintiff's clients have explicitly informed Plaintiff that they would be terminating Plaintiff's services because Defendants could offer lower prices.

14. Compounding the problem, major hospitality and light industrial companies such as have been contracting with Defendants to provide staffing. These companies thus act as joint employers of the misclassified workers and perpetuate the unfair competition suffered by Plaintiff in some cases knowingly enabling tax fraud and employment law evasion in violation of Ohio's racketeering laws.

4

15. Defendants' unlawful conduct negatively affects competitive conditions by reducing competition between providers and threatens to drive businesses that follow the law out of business, ultimately limiting consumer choices and impairing the opportunities of market participants.

16. Workers employed by the Defendants are engaged in work within the usual course of Defendants' hiring business. Thus, Defendants would not be able to satisfy the second prong ("prong B") of the "ABC" test which distinguishes employees from independent contractors. Instawork's website, for instance, advertises their services as the ability to "intelligently match" clients with "thousands of workers" near them for staffing needs. Qwick's "For Businesses" page indicates that the purpose of the company is to "provide hospitality staffing in every corner of the industry," including hotels, senior living facilities, stadiums, and restaurants. Tend similarly markets itself as a hospitality staffing company. Without their employees, Defendants would have no business. The business model of Defendants hinges exclusively on its employees-it provides no independent services beyond hiring, managing, and assigning employees to client shifts.

17. In addition, Defendants would likewise not be able to satisfy the first prong ("prong A") of the "ABC" test for employee classification, as they exercise a high degree of control over the performance of work by their hospitality workers. They exercise this control by using a comprehensive system of ensuring standards, rules, qualifications and other requirements that workers must follow and restricting which workers have the access to and ability to perform particular jobs.

18. Instawork, for instance, requires workers to create a detailed profile including more than thirty skills data points, including work history, skill quizzes, and professional references and

5

certifications, and gives clients' full access to view these datapoints. It continues to evaluate and re-evaluate the workers on its platform with ratings, feedback, and on-time metrics using data from businesses for which workers fill shifts and data gathered directly from the employee via mandatory location tracking, mandatory health checklists, and mandatory pre-shift confirmations. It extensively incentivizes, guides, and controls workers' behavior before and during shifts by qualifying workers for different "levels" of the program based on meeting minimum performance ratings and satisfying certain monthly requirements. Employees at higher levels are financially rewarded via early access to shifts, possible shift bonuses, and the option to be paid immediately through "instapay." Negative ratings, on the other hand, can lead to reduced earnings and fewer work opportunities available via Instawork's algorithm. Instawork's Contractor Services Agreement includes a litany of prohibited behavior and reserves the right to suspend accounts in its sole discretion when its terms and conditions are violated.

19.    Qwick similarly required workers to engage in a detailed vetting process that includes a personal orientation and requires at least one year of experience in any shift they hope to attain. They also inspected each worker's food and alcohol handling certifications and at times require specific training. Users rated workers on a five-star scale based on experience, personality, punctuality, and the use of specific attire. Quick also incentivized desired individuals to participate in certain shifts by providing bonuses based on city, shift type, and desired experiences. Breaks were provided at the discretion of the onsite manager and are often unpaid, and employees are required to clock in and out for shifts and break via an app. Negative ratings from consumers had a direct impact on employee's earning potential, and poor performance could result in mandatory coaching. The City of San Francisco successfully sued Qwick in 2023, accusing it of unlawful wage theft through the misclassification of its workers. *See* <u>People v.</u>

E-FILED 06/30/2025 4:41 PM / CONFIRMATION 1655316 / A 2503201 / COMMON PLEAS DIVISION / IFIJ

Qwick Inc., CGC-23-608756 (Cal. Super.Ct.). A permanent injunction was entered against Qwick prohibiting it from classifying its California hospitality workers as independent contractors, effective July 1, 2024. Nonetheless, Plaintiff has been undercut by Qwick's prior misclassification of its workers.

20.     Tend likewise exerts a high degree of vetting and control over employees to ensure that it "only onboard[s] the most well-regarded hospitality professional" onto its platform, according to its website. Tend reviews all applications and interviews a select few applicants for placement. Applicants are required to answer skill-based questions and are "graded out" based on twenty skill and personality tags. Tend mandates specific attire for workers, providing workers with photo references and suggestions on where to purchase such clothing.

21.     Gigpro operates under a similar business model to the other Defendants, presenting itself as a crucial link between hospitality businesses and workers. Gigpro's advertises itself as providing a quick and efficient way to fill staffing gaps in the hospitality industry, positioning itself as an indispensable resource for both workers seeking employment and businesses in need of staff. Their website and marketing materials emphasize the ease of connecting with qualified local professionals which is central to their operational model. Gigpro requires workers to undergo a stringent vetting process, which includes submitting detailed profiles with personal and professional information, undergoing background checks, and meeting specific experience requirements. This process, controlled tightly by Gigpro, ensures that only workers who adhere to their standards and expectations gain access to work opportunities. Moreover, Gigpro's control extends into the performance phase, where they monitor and rate workers based on feedback from employers, directly influencing the workers' future work opportunities and earnings. The degree of oversight and the criteria imposed for selecting and retaining workers demonstrate

7

Gigpro's high degree of control, aligning them closely with the traditional employer-employee relationship, rather than that of an independent contractor model. This indicates that Gigpro would likely fail to satisfy both the first prong ("prong A") and the second prong ("prong B") of the Dynamex "ABC" test for employee classification, casting doubt on their classification of workers as independent contractors.

22. The other parties named in the complaint all follow similar models as the above-mentioned defendants and would not be able to meet the factors test.

23. The parties named have all engaged in a pattern of misclassifying workers in order to evade taxes and other employer obligations, which allowed them to offer lower prices and become more profitable. The investors who funded these companies are sophisticated and would be aware of employment law requirements. Thus, the companies named, their investors, and possibly their clients have colluded to defraud the state of Ohio, local governments in Ohio, and the federal government of rightly due tax monies. The parties have violated ORC Chapters 4141, 4121, 4123, 4127, and 4131 by misclassifying employees which has damaged plaintiff along with state, local and the federal government. These violations would lead to taxation fraud per ORC 2913.05 and 2913.06. Thus defendants have violated by knowingly agreeing to adopt the goal of further facilitating the operation of the aforementioned enterprise through a pattern of racketeering, and by agreeing to the commission of multiple predicate acts. As a direct and proximate result of the pattern of racketeering activity, by and through each of the unlawful acts recited herein, Upshift Work LLC has been injured in its business and property.

24. In addition, the investors and advisors of the defendants are liable for those unfair business practices. The investors and advisor have aided and abetted the misclassification of the

8

defendants' workers, in violation of Ohio law. The investors and advisors have encouraged and indeed profited from this misclassification.

25.     Defendant Morgan actively and regularly assists Gigpro in securing business contracts by unlawful methods.

### III.    CAUSES OF ACTION
### UNFAIR COMPETITION

26.     Plaintiff incorporates the preceding paragraphs as though fully rewritten herein.

27.     Ohio Common Law proscribes business practices that are unlawful, unfair, or fraudulent and provides that actions for relief may be brought by a person who has lost money or property as a result of such conduct.

28.     Defendants' conduct as set forth above, in misclassifying employees as independent contractors and advising and aiding and abetting such misclassification, constitutes a violation of Ohio law and constitutes an unlawful business practice.

29.     Defendants' actions were designed to and did harm the business of Plaintiff.

30.     As a direct and proximate result of Defendant's unfair competition with Plaintiff, Plaintiff has been damaged in an amount to be proven at trial, but believes to be in excess of $500,000, plus interest, costs, and attorneys' fees.

31.     The actions of Defendants in engaging in unlawful and unfair competition were intentional and malicious, entitling Plaintiff to an award of punitive damages.

### TORTIOUS INTERFERENCE WITH CONTRACTUAL
### AND BUSINESS RELATIONSHIPS

32.     Plaintiff incorporates the preceding paragraphs as though fully rewritten herein.

33.     Plaintiff has valid and existing contracts and business relationships with its customer.

34.     Defendants are and have been aware of such contracts and relationships.

9

35.     Defendant, without privilege, justification, or cause, intentionally and unfairly interfered with Plaintiff's contracts and business relationships with its customers. Upon information and belief, Defendants' interference has caused certain contracts and business relationships of Plaintiff to be terminated or limited.

36.     As a direct and proximate result of Defendant's tortious interference with Plaintiff's contracts and business relationships, Plaintiff has been damaged in an amount to be proven at trial, but believed to be in excess of $500,000, plus interest, costs, and attorneys' fees.

37.     The actions of Defendants in interfering with these contracts and business relationships were intentional and malicious, entitling Plaintiff to an award of punitive damages.

## VI.     PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally as follows:

A.     Declare and find that the Defendants have violated Ohio law in respect to unfair competition and tortious interference with contractual and business relationships;

B.     Award compensatory damages in an amount according to proof,

C.     Award injunctive and declaratory relief in the form of an order directing Defendants to comply with Ohio law;

D.     Award all costs and attorney's fees incurred prosecuting this claim;

E.     Award interest and costs;

F.     Award punitive damages; and

G.     Award any such other relief as in law or equity may pertain.

10

Respectfully submitted,

DUWEL LAW

*/s/ David M. Duwel*
DAVID M. DUWEL (0029583)
130 West Second Street, Ste 2101
Dayton, Ohio 45402
PH:     (937) 297-1154
FAX:   (937) 297-1152
Attorney for Plaintiff

## JURY DEMAND

Plaintiff demands a trial by jury.

*/s/ David M. Duwel*
DAVID M. DUWEL (0029583)

11